# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Matthew L. Madsen<br><br>*Defendant(s)* | Case No. **CR 26-70111-MAG** |

**FILED**
Feb 04 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  January 2023 to February 2025  in the county of  Monterey  in the
Northern  District of  California , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1343, 1346 and 1349 | Conspiracy to commit honest services wire fraud |

This criminal complaint is based on these facts:

See affidavit of FBI Special Agent David Hamblin, attached and incorporated.

☑ Continued on the attached sheet.

Approved as to form: AUSA Michael G. Pitman

/s/ David Hamblin/SvK w/permission
*Complainant's signature*

David Hamblin, FBI Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date: February 3, 2026

City and state:  San Jose, CA

*Judge's signature*

Hon. Susan van Keulen, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, David Hamblin, Special Agent, Federal Bureau of Investigation, being duly sworn, state:

## INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is submitted in support of a request for the issuance of a criminal complaint charging Mathew L. Madsen, who will be referred to as MADSEN throughout this affidavit, with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346 and 1349. For the reasons set forth below, I believe there is probable cause that MADSEN has committed the foregoing violations of federal law. Because this affidavit is submitted for the purpose of obtaining an arrest warrant, I have not included each and every fact known to me in this case. Rather, I have set forth the facts that I believe are necessary to support probable cause for the issuance of an arrest warrant for MADSEN.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2022. I am currently assigned to investigate violations of federal criminal law including complex financial crimes and public corruption in the FBI's San Francisco Field Office.

3. By virtue of my FBI employment, I perform and have performed a variety of investigative tasks, to include functioning as the case agent and/or co-case agent on investigations involving wire fraud, public corruption, and health care fraud. I have received training regarding interviewing and interrogation techniques, the execution of federal search warrants and seizures, and the identification and collection of evidence. In addition, I have personally participated in the execution of federal search warrants involving the search and seizure of digital equipment and digital evidence.

4. I am an investigator and law enforcement officer of the United States. I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law. I am familiar with the facts as set forth herein from my personal observations, interviews, observations by other investigators and law enforcement officers as

1

related to me in conversation and in written reports, and from documents and other evidence obtained during the course of this investigation.

## APPLICABLE LAW

5. The wire fraud statute, 18 U.S.C. § 1343, make it unlawful to transmit or cause to be transmitted by means of wire communication in interstate commerce, any writings, signs or signals for the purpose of executing a scheme to defraud, or obtain money or property by means of false or fraudulent pretenses, representations, or promises. Under 18 U.S.C. § 1346, such a scheme can include a scheme to deprive another of the intangible right of honest services, and 18 U.S.C. § 1349 prohibits conspiracies to commit wire fraud or honest services fraud.

## STATEMENT OF PROBABLE CAUSE

6. Salinas Valley State Prison ("SVSP") and Correctional Training Facility ("CTF") are part of the California Department of Corrections and Rehabilitation ("CDCR"). CDCR is the law enforcement agency of the government of California responsible for the operation of the California State prison and parole system. During the 2022-2023 fiscal year, CDCR received more than $1,000,000 from a federal trust fund.

7. MADSEN was employed by CDCR from September 2017 to October 2025, and worked at SVSP from 2017 until he was relieved of active duty in February 2025.

8. On September 25, 2024, CDCR confiscated two cellular devices ("THE DEVICES") from a cell an inmate ("INDIVIDUAL ONE") shared with another inmate at CTF. One of the confiscated devices was assigned phone number 510-334-6506 ("DEVICE ONE"), and the other confiscated device was assigned phone number 415-520-3759 ("DEVICE TWO"). Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that INDIVIDUAL ONE was the user of THE DEVICES for several reasons, including the context and content of the communications found on THE DEVICES, the fact that INDIVIDUAL ONE admitted possessing THE DEVICES during CDCR administrative proceedings, and the fact that the text messages found on THE DEVICES included photos of INDIVIDUAL ONE and INDIVIDUAL ONE's spouse ("INDIVIDUAL

TWO"). Information provided by CDCR indicates that INDIVIDUAL ONE was an inmate at SVSP from June 2014 to May 2023, and was an inmate at CTF from May 2023 to May 2025. Although he is no longer housed at CTF, INDIVIDUAL ONE remains incarcerated at a CDCR institution as of the date of this affidavit. INDIVIDUAL ONE has been married to INDIVIDUAL TWO since before 2023.

9. Cellular devices are considered contraband in California state prisons absent authorization, and INDIVIDUAL ONE was not authorized to have cellular devices in SVSP or CTF at any time. I know from my training and experience that cellular devices are a valued commodity in prison that can also affect the safety and security of the inmates and employees of institutions. I know that CDCR inmates use cellular devices to circumvent the mandatory screening of all incoming and outgoing communication from CDCR institutions. I also know that inmates have used cellular devices to facilitate and coordinate violent attacks against other inmates as well as the smuggling and trafficking of contraband such as cellular devices and drugs.

10. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I know that CDCR personnel are aware that contraband may not be brought into California state prisons, and that when CDCR personnel encounter contraband inside prisons, they must confiscate it and report its presence to other CDCR personnel. However, corrupt CDCR personnel sometimes introduce contraband into prisons, and fail to confiscate contraband or to report its presence as required.

11. An extraction of THE DEVICES revealed text messages exchanged between THE DEVICES and a phone number which I believe, based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, was associated with INDIVIDUAL TWO for several reasons, including the context and content of the communications, the fact that the phone number was saved in THE DEVICES under INDIVIDUAL TWO's first name next to heart and wedding ring emojis, and the fact that the text messages exchanged include photos of INDIVIDUAL ONE and INDIVIDUAL TWO.

12. On July 31, 2023, DEVICE ONE sent a text message including the following language to the phone number associated with INDIVIDUAL TWO:

| Date | Sender | Recipient | Text |
|---|---|---|---|
| 7/31/2023 | DEVICE ONE | INDIVIDUAL TWO | Babe can u send [INDIVIDUAL THREE's first name][1] 2500 to send to m[2] wen I get off work ill get it out my poker cashappto give back to u promise I just need send dat out now in am ok |

13. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that in this message, among other things, INDIVIDUAL ONE requested that INDIVIDUAL TWO send $2,500 to INDIVIDUAL THREE so that INDIVIDUAL THREE could send the money to MADSEN, and promised to repay INDIVIDUAL TWO for the outlay.

14. A review of records collected from financial institutions revealed the following financial transactions:

| Posting Date | Sender | Recipient | Payment Amount |
|---|---|---|---|
| 7/31/2023 | INDIVIDUAL TWO | INDIVIDUAL THREE | $1,500.00 |
| 7/31/2023 | INDIVIDUAL TWO | INDIVIDUAL THREE | $1,000.00 |
| 7/31/2023 | INDIVIDUAL THREE | MADSEN | $1,000.00 |
| 8/01/2023 | INDIVIDUAL THREE | MADSEN | $1,000.00 |

15. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that these transactions indicate that INDIVIDUAL

---

[1] INDIVIDUALS TWO, THREE, FOUR and FIVE are all related to each other.
[2] Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that references to "M" and "m" in these text messages are coded references to MADSEN for several reasons, including the context and content of the communications, the fact that several of those messages indicate that 831-xxx-xx28 is a telephone number for "M" or "m," and the fact that telephone number 831-xxx-xx28 is MADSEN's known telephone number based on toll records and employment records.

TWO acted upon INDIVIDUAL ONE's request, and sent $2,500 to INDIVIDUAL THREE, who then sent $2,000 to MADSEN on INDIVIDUAL ONE's behalf.

16. On August 6, 2023, the phone number associated with INDIVIDUAL TWO sent a text message including the following language to DEVICE ONE:

| Date | Sender | Recipient | Text |
|---|---|---|---|
| 8/6/2023 | INDIVIDUAL TWO | DEVICE ONE | I just sent [INDIVIDUAL THREE's first name] $1000 from my own money to send the full 1300 smh |

17. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that in this message, among other things, INDIVIDUAL TWO informed INDIVIDUAL ONE that INDIVIDUAL TWO sent $1,000 to INDIVIDUAL THREE on behalf of INDIVIDUAL ONE so that INDIVIDUAL THREE could send $1,300 to MADSEN on INDIVIDUAL ONE's behalf.

18. A review of records collected from financial institutions revealed the following financial transactions:

| Posting Date | Sender | Recipient | Payment Amount |
|---|---|---|---|
| 8/7/2023 | INDIVIDUAL TWO | INDIVIDUAL THREE | $1,000.00 |
| 8/7/2023 | INDIVIDUAL THREE | MADSEN | $1,000.00 |
| 8/15/2023 | INDIVIDUAL THREE | MADSEN | $300.00 |

19. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that these transactions indicate that INDIVIDUAL TWO sent $1,000 to INDIVIDUAL THREE, who then sent two payments totaling $1,300 to MADSEN on INDIVIDUAL ONE's behalf.

20.     In September 2023, DEVICE ONE and the phone number associated with INDIVIDUAL TWO exchanged text messages including the following language:

| Date | Sender | Recipient | Text |
|---|---|---|---|
| 9/11/2023 | DEVICE ONE | INDIVIDUAL TWO | lb[3] wax[4]<br>6 zips[5] ice[6]<br>2 zip wax<br>3 phone w/box & cable<br>Gamer control<br>2 fire sticks<br>Chain[7]<br>Vapes |
| … | | | |
| 9/17/2023 | DEVICE ONE | INDIVIDUAL TWO | Wen u dropped stuff to M u put that priority iPhone in there right |
| 9/17/2023 | INDIVIDUAL TWO | DEVICE ONE | I believe so |
| 9/17/2023 | DEVICE ONE | INDIVIDUAL TWO | U don't have it at the house or anything right |
| 9/17/2023 | INDIVIDUAL TWO | DEVICE ONE | No babe I don't have anything he got everything |

21.     Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that in these messages, among other things, INDIVIDUAL ONE communicated a list of items that INDIVIDUAL ONE wanted

---

[3] Based on my training and experience, I know that "lb" is sometimes used as a term meaning "pound."

[4] Based on my training and experience, I know that "wax" is sometimes used as a slang term meaning "cannabis concentrate."

[5] Based on my training and experience, I know that "zip" is sometimes used as a slang term meaning "ounce."

[6] Based on my training and experience, I know that "ice" is sometimes used as a slang term meaning "methamphetamine."

[7] Based on my training and experience, I know that "chain" is sometimes used as a slang term meaning "jewelry."

INDIVIDUAL TWO to deliver to MADSEN, including "phone[s]." Several days later, INDIVIDUAL ONE asked INDIVIDUAL TWO whether a specific iPhone was included in the items delivered to MADSEN, and INDIVIDUAL TWO responded that INDIVIDUAL TWO believed INDIVIDUAL TWO had delivered the iPhone to MADSEN, and that INDIVIDUAL TWO provided "everything" to MADSEN, and retained nothing.

22. A review of records collected from financial institutions revealed the following financial transaction:

| Posting Date | Sender | Recipient | Payment Amount |
|---|---|---|---|
| 2/5/2024 | INDIVIDUAL THREE | MADSEN | $3,400.00 |

23. On February 6, 2024 at 5:26 am UTC, the following image was saved to DEVICE ONE:



24. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that these transactions indicate that INDIVIDUAL THREE sent $3,400 to MADSEN on INDIVIDUAL ONE's behalf, and a receipt documenting the transfer was transmitted to INDIVIDUAL ONE.

7

25.     A review of records collected from financial institutions revealed that accounts held in the name of INDIVIDUAL THREE transferred at least $19,650 to an account held in the name of MADSEN between July 2023 and February 2024.

26.     On May 13, 2024, at 1:09 and 1:23 am UTC, respectively, the following images were saved to DEVICE ONE:

 

27.     Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that the image above on the left depicts, among other things, several individually wrapped bundles, several of which appear to contain electronic devices, and several of which appear to be labeled, arranged on a bed inside a prison.  This image may depict contraband successfully introduced into a prison setting.

28.     Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I know that electronic devices are sometimes packaged together in preparation for smuggling into prisons in order to protect the devices or to signify that the devices are to be delivered to the same individual, and I believe that the image above on the right depicts several electronic devices wrapped in black electrical tape.  This image may depict contraband which has been prepared for smuggling into a prison setting.

29. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that the saving of these images to DEVICE ONE on May 13, 2024, indicates INDIVIDUAL ONE may have been involved in an effort to smuggle contraband into a CDCR facility in May 2024.

30. A review of records collected from financial institutions revealed the following financial transaction:

| Posting Date | Sender | Recipient | Payment Amount |
|---|---|---|---|
| 5/14/2024 | INDIVIDUAL FOUR | MADSEN | $1,500.00 |
| 5/14/2024 | INDIVIDUAL FOUR | MADSEN | $1,500.00 |

31. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that these transactions indicate that INDIVIDUAL FOUR sent $3,000 to MADSEN, possibly on INDIVIDUAL ONE's behalf in connection with an effort to smuggle contraband in May 2024.

32. On May 22, 2024, DEVICE ONE and the phone number associated with INDIVIDUAL TWO exchanged text messages including the following language:

| Date | Sender | Recipient | Text |
|---|---|---|---|
| 5/22/2024 | DEVICE ONE | INDIVIDUAL TWO | U send [INDIVIDUAL FIVE's first name] the money baby |
| 5/22/2024 | INDIVIDUAL TWO | DEVICE ONE | Yes and no<br>I don't remember the amount |
| 5/22/2024 | DEVICE ONE | INDIVIDUAL TWO | 1,425<br>600 goes to M |

33. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that in this message, among other things, INDIVIDUAL ONE asked INDIVIDUAL TWO whether INDIVIDUAL TWO sent money to INDIVIDUAL FIVE. INDIVIDUAL TWO replied that INDIVIDUAL TWO had sent money to

INDIVIDUAL FIVE, but could not remember the amount of money sent. INDIVIDUAL ONE responded that that the amount was $1,425, and that $600 was to be sent to MADSEN.

34. A review of records collected from financial institutions revealed the following financial transaction:

| Posting Date | Sender | Recipient | Payment Amount |
|---|---|---|---|
| 5/22/2024 | INDIVIDUAL FOUR | MADSEN | $600.00 |

35. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that these transactions indicate that INDIVIDUAL FOUR, who is related to INDIVIDUAL FIVE, sent $600 to MADSEN on INDIVIDUAL ONE's behalf.

36. In June 2024, DEVICE ONE sent a text message including the following language to the phone number associated with INDIVIDUAL TWO:

| Date | Sender | Recipient | Text |
|---|---|---|---|
| 6/02/2024 | DEVICE ONE | INDIVIDUAL TWO | When u wake up send 1500 to [INDIVIDUAL FIVE's first name] for me or [INDIVIDUAL FOUR's first name] and have her send it to M please love u b4 he start bugging u |

37. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that in this message, among other things, INDIVIDUAL ONE requested that INDIVIDUAL TWO send $1,500 to INDIVIDUAL FOUR or INDIVIDUAL FIVE so that INDIVIDUAL FIVE could send the money to MADSEN.

38. A review of records collected from financial institutions revealed the following financial transaction:

| Posting Date | Sender | Recipient | Payment Amount |
|---|---|---|---|
| 6/10/2024 | INDIVIDUAL FOUR | MADSEN | $1,500.00 |

39. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that these transactions indicate that INDIVIDUAL FOUR sent $1,500 to MADSEN on INDIVIDUAL ONE's behalf.

40. A review of records collected from financial institutions revealed that accounts held in the name of INDIVIDUAL FOUR transferred at least $32,600 to accounts held in the name of MADSEN between May 2024 and January 2025.

41. On September 24, 2024 at 4:58 and 5:02 am UTC, respectively, the following images were saved to DEVICE ONE:




42. Based on my training and experience, and my knowledge of the evidence obtained in this investigation to date, I believe that the image above on the left depicts a screen-shot of text message exchange between an unknown device and MADSEN's known telephone

number, 831-xxx-xx28, which I have partially redacted with a red box. I believe that the image above on the right depicts a screen-shot of the same exchange, but this version appears to have been edited in an effort to obscure MADSEN's known telephone number using black marks

43. Toll records show that, between February 21, 2023 and April 19, 2025, MADSEN's known telephone number (831-xxx-xx28) and the phone number associated with INDIVIDUAL TWO exchanged 177 voice calls and 1208 text messages.

44. Toll records show that, between March 23, 2023 and September 22, 2024, MADSEN's known telephone number (831-xxx-xx28) and the phone numbers associated with THE DEVICES exchanged 869 voice calls and 31 text messages.

45. On February 3, 2025, federal agents, along with other law enforcement personnel, conducted a non-custodial, voluntary, overtly recorded interview of MADSEN. During this interview, MADSEN admitted bringing items including telephones and tobacco into SVSP at INDIVIDUAL ONE's request, and in exchange for money. MADSEN said that he communicated with INDIVIDUAL ONE's spouse to plan smuggling events.

46. MADSEN said he had been paid approximately $100,000 for his role in the scheme, some of which he received in cash, and some of which was paid to him electronically, including via Zelle. MADSEN said that he had received electronic payments in connection with the scheme from INDIVIDUAL THREE and INDIVIDUAL FOUR.

47. On February 3, 2025, federal agents conducted a non-custodial, voluntary, overtly recorded interview of INDIVIDUAL TWO. During this interview, INDIVIDUAL TWO admitted knowing MADSEN, and that INDIVIDUAL FOUR sent money to MADSEN. INDIVIDUAL TWO also admitted delivering approximately twenty phones with chargers to MADSEN in Salinas, California, so that MADSEN could smuggle them into the prison, and admitted delivering approximately $20,000 in cash to MADSEN.

## CONCLUSION

48. Based on the information above, I submit that there is probable cause to believe that MADSEN and others conspired to commit honest services fraud in violation of 18 U.S.C. §§

1343, 1346 and 1349.  Accordingly, I respectfully request that a warrant for the arrest of Mathew L. Madsen be issued.  I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

Respectfully submitted,

/s/ David Hamblin/SvK w/permission
DAVID HAMBLIN
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this  3rd   day of February, 2026.

_____
HON.  SUSAN VAN KEULEN
United States Magistrate Judge